AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
1/06/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: asi  DEPTUTY



FILED
CLERK, U.S. DISTRICT COURT
01/06/26
CENTRAL DISTRICT OF CALIFORNIA
BY: KC  DEPUTY

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

PEDRO CAMPOS-RODRIGUEZ,
aka PEDRO RODRIGUEZ CAMPOS,
aka GABRIEL NEGRETE,

    Defendant.

Case No.   5:26-mj-00005-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Gabriel Denton, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of August 9, 2023, in the county of Riverside in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Removal |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Gabriel Denton
Complainant's signature

Gabriel Denton, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   January 6, 2026

Judge's signature

City and state:   Riverside, California

Hon. Sheri Pym, U.S. Magistrate Judge
Printed name and title

SAUSA: Blake Hannah (x0172)

**AFFIDAVIT**

I, Gabriel Denton, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for PEDRO CAMPOS-RODRIGUEZ, also known as ("aka") Pedro Rodriguez Campos, aka Gabriel Negrete ("CAMPOS-RODRIGUEZ") charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF SPECIAL AGENT GABRIEL DENTON

3. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since April 2007. I am currently assigned to the Integrated Operations Group Task Force, where I conduct investigations into violations of Federal firearms and immigration laws. As a part of this task force, I regularly work and consult with agents and officers with the Department of

Homeland Security ("DHS"), to include SAs with Homeland Security Investigations ("HSI") and Officers with US Immigration and Customs Enforcement ("ICE") and Removal Operations ("ERO"). Through working with these personnel, I have become familiar with DHS databases that are used to identify individuals who are subject to prosecution for immigration crimes.

4. I have completed the Criminal Investigator Training Program and Special Agent Basic Training at the Federal Law Enforcement Training Center, where I received training in Federal laws and regulations. I regularly refer to these laws and regulations to perform my duties.

### III. TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

5. Based on my training and experience and communication with DHS employees within the Task Force, I know the following:

a. Every person has a unique set of fingerprints. I also know that unique identification numbers - including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigation ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints. In many cases, the Department of Homeland Security and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b. Moreover, when a person is fingerprinted by DHS agencies, such as ICE (formerly Immigration and Naturalization

Service), those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file").  An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage.  That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted to the United States, pursuant to, for example, a non-immigrant visa.

     6.   Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

## IV. STATEMENT OF PROBABLE CAUSE

7.   Based on my review of law enforcement reports and DHS records, conversations with other law enforcement officers and agents, and my own knowledge of this investigation, I know the following:

8.   On or about January 4, 2026, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on CAMPOS-RODRIGUEZ's biometric fingerprint information that, on January 3, 2026, he was arrested by the Riverside Police Department ("RPD"), within the Central District of California, for violation of California Penal Code § 29800(a)(1), Felon in Possession of a Firearm.

9.   CAMPOS-RODRIGUEZ is currently in the custody of the Riverside County Sheriff's Office.  Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for CAMPOS-RODRIGUEZ while he is in a custodial setting because once he is released from custody, he may abscond or evade apprehension, particularly in light of his prior removal and unlawful entry.  Effectuating an arrest while an arrest subject is in custody is materially safer for both officers and arrest subject and presents a significantly lower risk of flight or resistance.  Arrests in a controlled environment also reduces the need for high-risk operation in the community and minimizes potential harm to the public.

10. I compared a unique fingerprint identifier, specifically CAMPOS-RODRIGUEZ's FBI number, from the arrest referenced above against those contained in the immigration and removal records retained for CAMPOS-RODRIGUEZ in DHS indices. I have determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference CAMPOS-RODRIGUEZ, a previously removed alien.

11. On or about January 5, 2026, I conferred with other law enforcement officers, including DHS personnel, and reviewed records associated with CAMPOS-RODRIGUEZ's unique fingerprint identifier that are contained in DHS indices. I learned the following about CAMPOS-RODRIGUEZ's immigration history:

    a. CAMPOS-RODRIGUEZ is a citizen and national of Mexico.

    b. On or about August 17, 2000, CAMPOS-RODRIGUEZ was ordered removed from the United States. On or about August 22, 2000, CAMPOS-RODRIGUEZ was physically removed from the United States.

    c. Since CAMPOS-RODRIGUEZ's most recent physical removal from the United States noted above, on August 9, 2023, CAMPOS-RODRIGUEZ was found within Riverside County, within the Central District of California, when he was arrested by the RPD for violations of California Health and Safety Code § 11370.1(a), Possession of a Controlled Substance While Armed, and California Penal Code § 25400(a)(2), Carrying a Concealed Weapon on Person, resulting in an electronic notification to

PERC based on CAMPOS-RODRIGUEZ's biometric fingerprint information.

      d.   There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General to re-enter the United States since CAMPOS-RODRIGUEZ's most recent removal. Based upon my training and experience, as well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I received.

### V. CONCLUSION

12. For all the reasons described above, there is probable cause to believe that CAMPOS-RODRIGUEZ has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

GABRIEL DENTON, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 6th day of January 2026.

HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE